**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JEAN-MARIE PIERROT,

Plaintiff,

v.

No. 9:15-CV-1415
(DNH/CFH)

SERGEANT HAHN and
MICHAEL PISERCHIA,

Defendants.

---

**APPEARANCES:** **OF COUNSEL:**

Jean-Marie Pierrot
Plaintiff pro se
115-124 Springfield Blvd
Cambria Heights
Queens, New York 11411

Hon. Eric T. Schneiderman
Attorney General for the
State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341
Attorneys for Defendants

SHANNAN C. KRASNOKUTSKI, ESQ.

**CHRISTIAN F. HUMMEL,**
**U.S. Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Jean-Marie Pierrot brings this action seeking declaratory relief, injunctive relief, and punitive damages pursuant to 42 U.S.C. § 1983. At all relevant times, plaintiff was incarcerated at Adirondack Correctional Facility ("Adirondack"). Plaintiff's initial

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

complaint, filed November 30, 2015, alleged that defendants Hahn and Piserchia violated his Eighth Amendment rights on October 1, 2014, through the use of excessive force. Dkt. No. 1 ("Compl."). Plaintiff further alleged that defendant Hahn had taken retaliatory action against him, thus violating his First Amendment rights, and that defendant Hahn had also violated his Fourteenth Amendment due process rights. Id. at 6. Plaintiff attached to his complaint an exhibit that contained additional potential allegations against the named defendants and others. Dkt. No. 1-2. On January 13, 2016, this Court dismissed, sua sponte, plaintiff's claim for punitive damages and his Fourteenth Amendment due process claims against defendant Hahn for failure to state a claim. Dkt. No. 5. Plaintiff moved for appointment of counsel (Dkt. No. 15) on April 27, 2016. This Court denied the motion with leave to renew. Dkt. No. 19. On June 29, 2016, plaintiff moved for a preliminary injunction and temporary restraining order (Dkt. No. 17), which were denied. Dkt. No. 19. On October 26, 2016, defendants moved for summary judgment, which is presently before the Court. Dkt. No. 21. Plaintiff opposed. Dkt. No. 24 ("Pl.'s Memo"). It is recommended that defendants' motion be granted in part and denied in part for the reasons set forth below.

## I. Statement of the Case

### A. Plaintiff's Version of Events

In his complaint, plaintiff alleges that on October 1, 2014, between 12:45 and 1:00 PM, plaintiff was present for his quarterly interview with guidance counselor ORC Heery in the B-Center building. Compl. at 4-5. At the close of the interview, plaintiff alleges that defendant Hahn began to verbally antagonize and curse at him. Id. at 4. Defendant Hahn

then physically forced plaintiff down a hall and into "a secluded stairwell" by grabbing his collar and pushing him. Id. Once in the hallway, defendant Hahn allegedly punched plaintiff on the right side of his face, cutting him; he also choked him, despite plaintiff's repeated statements that he did not want to fight. Id. Plaintiff walked away from defendant Hahn, who followed him. Id. Plaintiff then ran toward Grievance Supervisor Donaldson for help. Id. Defendant Hahn called to defendant Piserchia, a corrections officer, who "dragged" plaintiff into defendant Hahn's office. Id. at 5. Once in the office, defendants Hahn and Piserchia "punched, stomped, and kicked [plaintiff's] ribs and legs" while he was on the floor. Id. Defendant Hahn punched plaintiff twice in the face, bloodying his nose, and defendant Piserchia "wrestled [plaintiff] to the ground" and put handcuffs on him. Id. Plaintiff alleges that other officers were present and involved in the altercation, but he did not know their names, nor did he make them parties to this action. See id. Another unnamed officer told plaintiff that he should be taken to the infirmary. Id. At this time, plaintiff was bleeding from his nose and the side of his head.

Plaintiff's account of the alleged incident is not limited to his complaint, but is also contained in an attached exhibit (Dkt. No. 1-2),[2] where plaintiff included a letter to Acting Commissioner Annucci, detailing the incident and its aftermath, including the facts underlying his claim for retaliation. See Dkt. No. 1-2. at 1-7. Plaintiff alleged therein that his guidance meeting with ORC Heery involved a discussion of a letter plaintiff had previously sent Heery, requesting a meeting. Id. at 2. ORC Heery found the letter offensive and harassing. Id. Plaintiff tried to explain himself, and asked about his status at Adirondack,

[2] Defendants do not challenge the validity of plaintiff's exhibits (Dkt. No. 1-2), including medical records, inmate grievances, and internal administrative reports.

where he was then incarcerated. Id. Plaintiff also asked whether his tentative release date had changed. Id. Defendant Hahn then allegedly intervened, leading to the incident outlined in plaintiff's complaint. Id.

In the attached letter exhibit, plaintiff identifies a potential third defendant, unnamed in his complaint. Dkt. No. 1-2 at 4. Plaintiff claims that as he was walking away from the guidance building and toward the center of the compound (in front of the B-Center), he observed Lieutenant Mader and several other officers. Id. As defendants Hahn and Piserchia pursued plaintiff, Lieutenant Mader walked away, and, according to plaintiff, did nothing "to control and handle the matter." Id.

Plaintiff next contends that the Tier III Misbehavior Hearing on October 14 and 17, 2014 was based on a fabricated report by defendant Hahn. Dkt. No. 1-2. at 3. At the hearing, overseen by nonparty Lieutenant Rocque, plaintiff was found guilty of five offenses: violent conduct, creating a disturbance, assault on staff, interference with an employee, and refusing to follow direct orders. Id. at 8. As a result, he was placed in the solitary housing unit ("SHU") for six months, and lost his phone, package, and commissary privileges for the same period of time. Id. Lieutenant Rocque also recommended that plaintiff lose twelve months of good time. Id. Plaintiff claims that the hearing contained contradictory testimony from multiple witnesses, and that defendant Hahn fabricated the Misbehavior Report to justify his intentions to injure plaintiff. Id. at 5-6. The results of the hearing were affirmed on December 17, 2014. Id. at 27.

**B. Defendants' Version of Events**

In their statement of material facts (Dkt. No. 21-12, "SMF"), defendants allege that, at the time of the incident, defendant Hahn was a sergeant at Adirondack Correctional Facility who had been employed by the New York State Department of Corrections and Community Supervision ("DOCCS") for more than sixteen years. Dkt. No. 21-1 ("Hahn Dec.") ¶¶ 2, 4. Defendant Piserchia was a correctional officer with more than five years of experience at Adirondack, who had been employed by DOCCS for more than ten years. Dkt. No. 21-3 ("Piserchia Dec.") ¶¶ 2, 3.

The incident at issue occurred at Adirondack on October 1, 2014. Hahn Dec. ¶ 6; Piserchia Dec. ¶ 6; Dkt. No. 21-2 ("Hahn Exs. A, B"). The incident was documented according to DOCCS policy in a Use of Force ("UOF") Report and an Unusual Incident Report ("UIR"). Hahn Dec. ¶¶ 6, 7; Hahn Exs. A, B. The UOF Report states that the incident occurred when plaintiff was "disruptive" in the guidance area, prompting defendant Hahn to escort him away. Hahn Ex. A. Plaintiff "swung backwards" in an attempt to strike defendant Hahn, and then "bolted" to the walkway. Id. Defendant Hahn caught him and brought him to the B-Center area. Id. Plaintiff was once again "noncompliant," refusing to enter the sergeants' office, and kicking defendant Hahn in the right shin in an attempt "to push past him." Id. The account of plaintiff running away from his escort across the facility compound, refusing to enter the office, and kicking defendant Hahn in the right shin is corroborated by the UIR. Hahn Ex. B. Six Adirondack employees, including defendants, prepared memoranda reporting their versions of the incident. Hahn Exs. C, D; Dkt. No. 21-4 ("Piserchia Exs. A, B"); Dkt. No. 21-6 ("Krasnokutski Exs. A, B, C, D").

Defendants contend that the October 1, 2014 incident began when plaintiff was

meeting with ORC Heery, his guidance counselor. Dkt. No. 21-10 ("Krasnokutski Ex. K") at 62. ORC Heery reported that she counseled plaintiff regarding a letter request he had sent, which she believed to be "inappropriate and harassing." Id. at 56-57. ORC Heery stated in a memorandum to Lieutenant Mader dated October 1, 2014, that, during the meeting, plaintiff had behaved in a "belligerent, uncooperative[,] and threatening" manner to ORC Heery and defendant Hahn. Krasnokutski Ex. A. Defendant Hahn and plaintiff left the guidance area and crossed the facility compound to the B-Center building, which plaintiff entered upon instruction. Krasnokutski Ex. K at 71-73, 76. However, when defendant Hahn told plaintiff to enter the sergeants' office, plaintiff refused. Id. at 79.

Defendant Hahn prepared a misbehavior report ("MBR") on October 1, 2014, charging plaintiff with staff assault, violent conduct, refusal of a direct order, creating a disturbance, and interference with an employee. Hahn Ex. E. OCR Heery signed the MBR as a witness. Id. The account in the MBR is similar to the other accounts; it stated that plaintiff, while being escorted into the guidance stairwell, swung at defendant Hahn and "darted out" to the walkway, refusing "several direct orders to stop." Id. He was "briefly compliant" thereafter and was escorted into the B-Center building, but then refused to enter the sergeants' office and kicked defendant Hahn in the shin, and tried to push past him. Id. Defendant Hahn stated that it was necessary to use force at this point to subdue plaintiff. Id. Defendants claim that plaintiff cannot identify any witnesses to the alleged assault. Krasnokutski Ex. K at 67-68, 77.

After the use of force, plaintiff was escorted to the infirmary. Krasnokutski Ex. K at 84. Nurse Pelletieri prepared an Inmate Injury Report, dated October 1, 2014, that indicated that plaintiff had sustained an abrasion on his right temple, a small amount of

blood oozing from his left nostril, and "no other visible injuries/marks . . . at this time." Krasnokutski Ex. E. Photos of plaintiff documenting these injuries were also taken at the time. Krasnokutski Ex. F.

Plaintiff filed a grievance dated October 9, 2014 regarding his alleged assault, and DSS Woodruff was assigned to investigate it. Dkt. No. 21-7 ("Krasnokutski Ex. H"). DSS Woodruff gathered statements from Adirondack personnel, including defendants, as part of the investigation. Id. On October 13, 2014, at Upstate Correctional Facility, plaintiff was interviewed in connection with the grievance. Id. On October 30, 2014, Superintendent Uhler denied plaintiff's grievance, and the Central Office Review Committee ("CORC") affirmed the denial on February 18, 2015. Id.

Lieutenant Rocque conducted a Tier III disciplinary hearing on October 14 and 17, 2014, at which defendant Hahn, ORC Heery, and another corrections officer, Jones, testified. Dkt. No. 21-8 ("Krasnokutski Ex. I"). Lieutenant Rocque found plaintiff guilty of all charges and imposed penalties of six months in SHU, six months loss of phone, packages, and commissary, and a recommended twelve months[3] loss of good time. Id. CORC upheld Lieutenant Rocque's decision. Dkt. No. 21-9 ("Krasnokutski Ex. J").

Defendants allege that plaintiff was seen by a medical provider at Adirondack on October 3, 2014, who prepared a medical note indicating plaintiff's complaint of "being struck in head by a [sergeant]" and requesting cream for his right temple, though there was "no visible deformity." SMF ¶¶ 22, 23.[4]

---

[3] Defendants' SMF says six months, but the exhibit clearly says twelve and it is likely that this was a clerical error.

[4] Defendants have not provided the necessary exhibit (Krasnokutski Ex. G) to support these statements.

## II. Legal Standard

### A. Summary Judgment

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997) (internal citations omitted).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (internal citations omitted); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (internal citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law" . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## III. Discussion[5]

### A. Application of the Jeffreys Exception

In addition to claiming that they are entitled to summary judgment, defendants urge the court to disregard plaintiff's account of the facts because it is "[i]nherently [i]nconsistent and [i]mplausible." Dkt. No. 21-11 ("Defs.' Memo") at 7.[6] In Jeffreys v. City of New York, the Second Circuit held that the plaintiff's uncorroborated version of events was so improbable that "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint." 426 F.3d 549, 555 (2d Cir. 2005). On a balancing of factors, "[t]he Jeffreys exception applies when 1) the plaintiff relies 'almost exclusively on his own testimony,'; 2) the plaintiff's testimony is 'contradictory

---

[5] All unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

[6] Citation to Defs.' Memo refers to the document's internal pagination. Citation to all other documents is to the pagination generated by the Court's electronic filing system, CM/ECF.

or incomplete'; and 3) the plaintiff's testimony is contradicted by the evidence produced by the defense." Morris v. Plummer, No. 9:09-CV-0734 (NAM/DEP), 2011 WL 1135936, at *9 (N.D.N.Y. Mar. 2, 2011) (citation omitted).

With regard to plaintiff's excessive force claims against defendants, application of the Jeffreys exception is not warranted. The first factor, which looks to whether the plaintiff has substantiated his claims only by his own testimony, is met here. Morris, 2011 WL 1135936, at *9. Plaintiff's opposing memorandum does not provide a clear counter to defendants' statements of material facts regarding the October 1, 2014 incident, and the allegations contained in his memorandum are not supported with citations to the record. See generally Pl.'s Memo. Plaintiff claims that he has supported his allegations with evidence and a witness in support of his account of the facts, but other than multiple grievances that are based on his own statements, he has failed to provide the Court with evidence to further support his version of events. Cf. Pl.'s Memo at 7. Plaintiff's witness at the disciplinary hearing was found to lack credibility; however, regardless of this determination, that inmate's testimony is not before the Court at this time. Krasnokutski Ex. J. at 13. Instead, plaintiff references his filed grievances and disputes defendants' evidence, but merely expands on the facts alleged in his verified complaint and the attached exhibit. See Pl.'s Memo; Dkt. Nos. 1, 1-2. Therefore, this factor weighs in favor of applying the Jeffreys exception. See Torres v. Caron, No. 9:08-CV-0416 (NAM/GHL), 2009 WL 5216956, at *8 (N.D.N.Y. Dec. 30, 2009) (holding that the plaintiff's dependence on his verified complaint weighed in favor of application of the Jeffreys exception).

The second factor, whether the plaintiff's testimony is incomplete or contradictory, weighs against applying the Jeffreys exception. Morris, 2011 WL 1135936, at *9. Plaintiff's

initial complaint and attached exhibit, including grievances plaintiff filed while exhausting the administrative grievance process,[7] lay out a substantially consistent set of facts. See generally Compl.; Dkt. No. 1-2. Plaintiff consistently alleges that at the end of his meeting with ORC Heery, defendant Hahn escorted him out of the office and then assaulted him. Compl. at 4-5. As plaintiff tried to elude defendant Hahn, Hahn pursued him and enlisted the help of defendant Piserchia. Id. at 5. Defendants then continued to assault plaintiff, while defendant Piserchia "wrestled [plaintiff] to the ground" and placed him in mechanical restraints. Id. Plaintiff was taken to the infirmary, where he was examined for injuries to his head and face. Id. In his attached exhibit, plaintiff detailed the Tier III Misbehavior hearing, at which he was penalized for the October 1, 2014 incident, with loss of various privileges. Dkt. No. 1-2 at 3, 5-6, 8.

In his opposition to defendants' motion for summary judgment, plaintiff sets forth a similar narrative with regard to the two named defendants. Pl.'s Memo at 2. He indicates that defendants assaulted him, and provided a similar account of his injuries and the timeline of events. See id. at 2, 6-7. By contrast, in Jeffreys, the plaintiff's story changed as to whether he had been thrown out of a window by police officers, or whether he himself had jumped. Jeffreys, 426 F.3d at 552. Further, the plaintiff in Jeffreys failed to name the officers who had allegedly assaulted him. Id. Here, plaintiff names defendants Hahn and Piserchia in his excessive force claims, and his story remains substantially consistent across multiple statements. See Compl.; Dkt. No. 1-2; Pl.'s Memo; cf. Grubbs v. Serrell, No. 14-CV-467 (GLS/CFH), 2016 U.S. Dist. LEXIS 110783, at *35 (N.D.N.Y. Aug. 18, 2016)

[7] Defendants do not contest that plaintiff has exhausted the administrative process at this time. Therefore, despite plaintiff's repeated contentions in his opposition (see Pl.'s Memo), the undersigned does not address the issue of exhaustion since it is not currently before the Court.

(noting that, when the plaintiff's story had remained consistent by the time he was deposed, it weighed against applying the Jeffreys exception).

The third prong, which looks to whether plaintiff's account is contradicted by defendants' evidence, also weighs against applying the Jeffreys exception. Morris, 2011 WL 1135936, at *9. Plaintiff's version of events does differ from defendants' version in some respects, but the narratives follow a similar pattern. Plaintiff and defendants are in agreement that the October 1, 2014 incident began when Sergeant Hahn escorted plaintiff from ORC Heery's office, and culminated in a use of force. Pl.'s Memo at 2, 6-7; SMF ¶¶ 5, 7. The disputes between plaintiff and defendants' accounts relate to the extent and necessity of force used; the extent of plaintiff's injuries; and plaintiff's degree of compliance, not to the general timeline or narrative of events. See Pl.'s Memo at 12; SMF ¶¶ 13, 16, 19, 20, 31. Therefore, although there is disagreement, plaintiff's account of the facts is not so wholly contradicted as to make it impossible for a reasonable jury to believe him. See Jeffreys, 426 F.3d at 555 (citation omitted); see also Grubbs, 2016 U.S. Dist. LEXIS 110783, at *36 (stating that where the parties' accounts differ in only certain respects, application of the Jeffreys exception is inappropriate).

Therefore, although the first factor weighs in favor of its application, because the second and third factors do not apply, defendants are not entitled to dismissal of plaintiff's claims as inherently inconsistent and implausible under the Jeffreys exception.

**B. Excessive Force**

Having determined that defendants are not entitled to the outright dismissal of plaintiff's claims under the Jeffreys rule, the summary judgment standard applies to

plaintiff's claims alleging excessive force.

To succeed on an excessive force claim, a plaintiff must satisfy both an objective and a subjective test in assessing the conduct of the defendant. See Hudson v. McMillian, 503 U.S. 1, 20 (1992) (citations omitted). The objective prong requires that the defendant's conduct have caused "sufficiently serious" harm to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective prong looks to the defendant's intent, which must be "sufficiently culpable" and "wanton." Wilson, 501 U.S. at 297 (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). When an inmate seeks to show that a prison official's conduct was wanton, the inmate's showing must meet a four-factor test: "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response." Kee v. Hasty, No. 01 CIV.2123 (KMW/DF), 2004 WL 807071, at *11 (S.D.N.Y. Apr. 14, 2004) (citing Hudson, 503 U.S. at 7).

Here, plaintiff has failed to properly respond to defendants' statement of material facts under the Local Rules. Non-moving parties are instructed to "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y.L.R. 7.1(a)(3). Each denial must be supported by the record, and if facts contained in the moving parties' statement are not disputed, the Court shall deem them admitted. Id.; see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citations omitted). However, in the case of pro se plaintiffs, it is appropriate for courts to accept a plaintiff's unsworn memorandum of law in opposition to a defendant's motion, to the extent that the statements therein are based on the plaintiff's

personal knowledge or are supported by the record. See Berry v. Marchinkowski, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2015); see also Hamm v. Hatcher, No. 05 CIV. 503 (ER), 2013 WL 71770, at *7 (S.D.N.Y. Jan. 7, 2013) ("[The Court considered the entire record] as well as the unsworn statements in [the plaintiff's] opposition papers[—]but only to the extent that they are based on personal knowledge or supported by other admissible evidence in the record[.]"). To the extent that plaintiff has directly opposed defendants' statements of fact in his opposition, and that description is consistent with the facts laid out in his complaint, such statements will therefore be accepted.

Here, plaintiff and defendants have several disputes as to the facts surrounding the October 1, 2014 incident. Specifically, defendants allege that the incident occurred while defendant Hahn was attempting to escort plaintiff away from the guidance area, after plaintiff had been belligerent in a meeting with the guidance counselor. SMF ¶¶ 11-14. Defendants contend that, in the stairwell of the guidance building, plaintiff "swung backwards toward [defendant Hahn] and bolted out into the walkway." Id. ¶ 7. After catching plaintiff, defendant Hahn ordered plaintiff to enter the B-Center building, and plaintiff complied. Id. However, defendants contend that when defendant Hahn ordered plaintiff to enter the sergeant's office, plaintiff refused, kicking defendant Hahn in the shin and pushing him. Id. Defendants then allege that defendant Piserchia assisted defendant Hahn in subduing plaintiff, which required use of force and handcuffs. Piserchia Ex. at 2. Plaintiff was taken to the infirmary following the incident, and defendants claim that his injuries were limited to an abrasion on his right temple and a slight ooze of blood from his nose. Id. ¶ 20.

Plaintiff disputes this account. In his opposition, he claims that he was "beaten

viciously," and suffers "severe physical and mental pain and anguish" as a result, including a scar on his right temple. Pl.'s Memo at 6. Plaintiff states that he did not swing at or kick defendant Hahn. Id. at 6-7. He claims that he did not refuse a direct order, that he did not hit anyone, and that defendant Hahn pushed him into a "secluded stairwell" and punched and choked him. Id. at 7. Plaintiff also disputes defendants' claim that ORC Heery was a witness, as she signed the MBR. SMF ¶ 30. According to plaintiff, there were no witnesses in the stairwell, where the first major assault took place. Pl.'s Memo at 7.

Significant disputes exist between defendants and plaintiff as to whether the force was necessary or excessive. These facts are material in applying the four-factor test for assessing the subjective factor—wantonness of a prison official's claim in the context of a use of force incident. Kee, 2004 WL 807071, at *11 (citing Hudson, 503 U.S. at 7). Likewise, since significant disputes remain around the extent of plaintiff's injuries, it is not possible to resolve the objective prong relating to the seriousness of the harm caused. Farmer, 511 U.S. at 834 (1994) (citations omitted).

Therefore, because material questions of fact remain in dispute as to plaintiff's excessive force claims against defendants, the undersigned recommends that defendants' motion with regard to these claims be denied.

**C. Retaliation**

Plaintiff alleges that defendant Hahn assaulted him as a way of retaliating against plaintiff for having previously filed administrative grievances. Dkt. No. 1-2 at 6.

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: "(1) . . . the speech or conduct at

issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (citations omitted). Plaintiff brings his claim of retaliation only against defendant Hahn. Compl. at 6.

With regard to the first element, plaintiff's participation in the grievance process is a protected First Amendment activity. See Gill v. Riddick, No. CIV. 9:03-CV-1456, 2005 WL 755745, at *9 (N.D.N.Y. Mar. 31, 2005) (citations omitted); cf. Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) (citations omitted) (noting that inmates must have access to both judicial and administrative fora to seek redress of grievances against state officials). However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. Jan. 8, 2008). Therefore, conclusory allegations alone are insufficient. Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) ("[C]laim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

In the exhibit attached to his complaint, plaintiff presents an incident report involving defendant Hahn and non-party Sergeant Snyder. Dkt. No. 1-2 at 13. The incident involved an alleged assault on plaintiff by another inmate, after which plaintiff requested protective custody and a transfer. Id. at 13. Plaintiff's request was denied on August 18, 2014. Id.

This grievance fits squarely within the conduct that courts within the Second Circuit have ruled to be protected under the First Amendment. See Gill, 2005 WL 755745, at *9 (citations omitted); Franco, 854 F.2d at 589 (citations omitted). Therefore, the first element of plaintiff's retaliation claim is met.

The second prong of a retaliation claim requires a showing of some adverse action by the defendant that would deter a "similarly situated individual of ordinary firmness" from bringing forward their constitutionally-protected claims. See Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (citations omitted). The context of such an action is crucial in determining whether an action was actually adverse, and prisoners are expected to have more tolerance than the general public. Mateo v. Fischer, 682 F. Supp. 2d 423, 433-434 (S.D.N.Y. 2010) (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)). Presumably to show adverse action, plaintiff characterizes defendant Hahn's actions relating to the October 1, 2014 incident as cruel and excessive. Compl. at 6; Dkt. No. 1-2 at 1-5, Pl.'s Memo at 3, 6. To this point, in his opposition to defendants' motion, plaintiff states that he was beaten "with no justification." Pl.'s Memo at 4. Following a "procedurally . . . defective" Tier III hearing, plaintiff alleges that he was placed in solitary confinement "for doing something that [is] protected by the Constitution [sic]." Id. In the exhibit attached to his complaint, plaintiff repeatedly refers to an apparent conspiracy—an undefined plot or "plan"—by defendant Hahn, defendant Piserchia, and other unnamed prison administrative personnel to "railroad" him, "persecute" him, and keep him incarcerated. Dkt. No. 1-2 at 1-2, 4, 6. However, the only details that plaintiff provides in support of this apparent conspiracy are that defendant Hahn threatened him on "many occasions" and on August 4, 2014, threatened to punch plaintiff in the face. Id. at 3-4. Verbal threats can amount to an

adverse action, depending on the context and specificity. Mateo, 682 F. Supp. 2d at 434 (citations omitted) ("[S]ome verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action.").[8] Here, plaintiff articulates only one specific example: defendant Hahn's threat to punch him in the face. Dkt. No.1-2 at 3-4. However, even if this were to constitute an adverse action, it lacks the causal link required by the third prong of a retaliation claim.

Though the third prong of causal connection may be established circumstantially, the link between the exercise of protected activity and the resulting adverse action must exist. See Mateo, 682 F. Supp. at 435; cf. Lunney v. Brureton, No. 04 Civ. 2438 (LAK/GWG), 2007 WL 1544629, at *19-21 (S.D.N.Y. May 29, 2007) (finding that the threat, "if you don't stop writing grievances I'm going to break your fuckin' neck" constituted an adverse action and established a causal connection when a subsequent assault occurred). Courts assess four factors to determine whether the necessary causal link exists: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." Lunney, 2007 WL 1544629, at *21 (citing Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995)). Plaintiff has not made a strong showing of temporal proximity in support of his retaliation claim: he merely states that defendant Hahn threatened to punch him on August 4, 2014, and on October 1, 2014, defendant Hahn "decided to do that." Dkt. No. 1-2 at 3-4. Relying solely on temporal proximity—here, a period of approximately two months—is insufficient to support a claim of retaliation. See

[8] Verbal threats alone do not create a constitutional violation unless accompanied by physical force. See, e.g., Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995).

Sloane v. Mazzuca, No. 04 CV 8266 (KMK), 2006 WL 3096031, at *14 (S.D.N.Y. Oct. 31, 2006) ("Temporal proximity between the inmate's protected activity and the allegedy retaliatory, official action is simply too slender a reed on which to rest a § 1983 retaliation claim.") (internal citations and quotation marks omitted). However, even if he established temporal proximity, the other three factors in establishing a casual connection are not present. Cf. Lunney, 2007 WL 1544629, at *21. By his own admission, plaintiff's disciplinary record is far from clean, showing "approximately [twenty-five] misbehavior reports for Tier [I] to Tier [II] . . . within [his four] years of incarceration." Dkt. No. 1-2 at 5; cf. Lunney, 2007 WL 1544629, at *21. There is no record of plaintiff's version of events being vindicated at a hearing, and there is no record that defendant Hahn ever expressed a retaliatory motivation. Cf. Lunney, 2007 WL 1544629, at *21. In his complaint and opposition, plaintiff appears to argue that the October 1, 2014 incident was in retaliation for plaintiff's previously-filed grievances, but at no point does plaintiff connect defendant Hahn's threats and plaintiff's pursuit of the administrative grievance process. See Compl. at 6; Pl.'s Memo at 3, 8.

Since plaintiff has not met his burden in establishing a First Amendment retaliation claim, the undersigned recommends that defendants' motion for summary judgment with regard to this claim be granted.

**D. Additional Claims**

In his opposition to defendants' motion, plaintiff appears to attempt to bring new claims against defendants and other parties, not previously named as defendants. See Pl.'s Memo. It is well-established that plaintiffs—including pro se plaintiffs—may not use

oppositions to summary judgment, memoranda, or other such papers to pursue additional claims. See Allah v. Murphy, No. 9:14-CV-438 (GTS/TWD), 2016 WL 4401069, at *14 (N.D.N.Y. May 16, 2016) (quoting Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., 468 F. Supp. 2d 489, 495 (W.D.N.Y. 2007)) (noting that certain of the pro se inmate plaintiff's retaliation claims were not properly before the court, since they were raised for the first time in the plaintiff's opposition to the defendants' motion for summary judgment); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (citation omitted) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The appropriate action for plaintiff to take should he wish to add new claims and new defendants is to seek permission to file a motion to amend his complaint under Fed. R. Civ. P. 15(a). See Massie v. Ikon Office Solutions, Inc., 381 F. Supp. 2d 91, 95 (N.D.N.Y. 2005) (citations omitted) (indicating that even a pro se plaintiff was not entitled to add new claims in her opposition to a motion for summary judgment). Plaintiff has failed to do so. His only response to defendants' motion is to file a memorandum opposing their motion. See Pl.'s Memo.

Therefore, with regard to claims that plaintiff has raised for the first time in his opposition to defendants' motion for summary judgment, his only recourse is to seek permission to file a motion to amend from the Court, and if permission is given, file a motion to amend to add the new claims and new parties.

The undersigned has assessed and noted plaintiff's new potential claims below.[9]

---

[9] The undersigned notes that, although plaintiff did mention some of the individuals addressed in the following subsections in his complaint and attached exhibit, he did not provide sufficient evidence or information in the complaint or exhibit such that these individuals could have been on notice that claims would be brought against them.

**1. Deliberate Indifference to Serious Medical Needs**

Insofar as plaintiff seeks to pursue a claim of deliberate indifference to serious medical needs against unnamed medical personnel, plaintiff has not described facts in his complaint to support either prong needed to satisfy such a claim. See Dkt. No. 1-2 at 4; Hathaway v. Coughlin, 37 F.3d 63, 66 (1994) (citing Wilson, 501 U.S. at 298) (articulating an objective prong requiring a showing of a serious harm or risk of harm and a subjective prong relating to the mental culpability of the defendant)). On the contrary, plaintiff had attached medical records to his complaint showing that he was examined by a nurse and also indicated in the exhibit attached to his complaint that he was treated for his injuries. Dkt. No. 1-2 at 4, 22. Further, to bring a claim for serious indifference to medical needs, plaintiff must identify the medical staff against whom he seeks to bring the claim.

**2. Failure to Protect—Mader**

Plaintiff arguably seeks to allege a claim of failure to protect against Lieutenant Mader. Pl.'s Memo at 11. Plaintiff's complaint fails to provide a sufficient basis for a claim of deliberate indifference based on a failure to protect against Lieutenant Mader. In his attached exhibit, he merely indicates the he wanted "Mader to control and handle the matter[, which] did not occur [sic]." Dkt. No. 1-2 at 4. According to plaintiff, when defendant Hahn pursued him to the B-Center compound outside the guidance building, Lieutenant Mader was standing nearby with several officers, and then, as the incident escalated and defendant Hahn continued to assault plaintiff, Mader walked toward the messhall. Id.

To establish that a prison official has been deliberately indifferent to a serious harm

or risk of harm to an inmate, the inmate plaintiff must show that the disregard on the defendant's party has risen "to the level of disregarding a substantial and pervasive risk of violence." Warren v. Goord, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (citations omitted); see also Farmer, 511 U.S. at 842. Plaintiff's complaint has simply not alleged sufficient facts with regard to such a claim against Lieutenant Mader. See generally Compl; Dkt. No. 1-2.

**3. Failure to Protect—Heery**

Similarly, in the exhibit attached to his initial complaint, plaintiff claims that ORC Heery did not intervene with defendant Hahn "lunge[d]" at plaintiff, and that she "knew [that defendant] Hahn planned to hurt [plaintiff]." Dkt. No. 1-2 at 3, 5. If plaintiff intended to claim that ORC Heery was liable for deliberate indifference through failure to protect, once again, he has failed to allege sufficient facts to meet the standard of showing that ORC Heery wantonly disregarded a serious harm or risk of harm. See Farmer, 511 U.S. at 842-43.

**4. Fourteenth Amendment[10]**

In his opposition papers, plaintiff also attempts to renew his Fourteenth Amendment due process violations against defendant Hahn. Pl.'s Memo at 3-4. However, this Court dismissed that claim without prejudice (Dkt. No. 5) and plaintiff has not sought leave to

---

[10] To the extent that plaintiff attempts to raise a state law claim of false imprisonment flowing from his Fourteenth Amendment claim, the undersigned notes that, as plaintiff's Fourteenth Amendment claim has been dismissed and he has not amended his complaint, this potential false imprisonment claim is not properly before the Court at this time. See Pl.'s Memo at 3. Should plaintiff wish to proceed on such claim, he must seek permission from the Court to file a motion to amend his complaint and, if permission is granted, attempt to attempt to amend the deficiencies in his Fourteenth Amendment claim as well as add a false imprisonment claim.

amend with regard to this claim. Therefore, it is not properly before the Court at this time.

**5. Conspiracy**

To the extent that a liberal reading of the exhibit attached to his complaint or his opposition papers may suggest that plaintiff is attempting to raise a conspiracy claim against defendant Hahn, defendant Piserchia, ORC Heery, and other unnamed personnel at Adirondack, he has not provided sufficient facts to establish the elements of conspiracy. See Dkt. No. 1-2 at 1-6; Pl.'s Memo at 3-4. To establish a claim for conspiracy, a plaintiff must show "(1) an agreement between two or more state actors or a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 507 (S.D.N.Y. 2008) (first citing Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); then citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). Plaintiff has not provided any evidence of an agreement existing between defendants or other nonparties to the current action, nor has he shown that the October 1, 2014 alleged assault was in furtherance of such a goal. As many parties to this alleged "plot" are unnamed, he has not shown that the named defendants, ORC Heery, or these other administrative officials acted in concert, or how they did so. See Dkt. No. 1-2 at 1. For these reasons, plaintiff has failed to establish a claim for conspiracy. Further, insofar as this potential conspiracy claim is related to plaintiff's Fourteenth Amendment claim,[11] that

[11] In his opposition to defendants' motion for summary judgment, plaintiff appears to suggest that his Fourteenth Amendment rights were violated because, at the Tier III hearing, he was punished for complaining by being placed in SHU. Pl.'s Memo at 3. In the exhibit attached to his complaint, he appears to allege that the Tier III hearing was conducted unfairly, as part of a plan by defendant Hahn, ORC Heery, and other unnamed prison officials to persecute him. Dkt. No. 1-2 at 1, 3.

claim has been dismissed, and, therefore, a related conspiracy claim would not be properly before the Court at this time.

### E. Request for Counsel

Plaintiff also contends that he is entitled to have counsel appointed. Pl.'s Memo at 10-11. Plaintiff requested counsel on April 27, 2016 (Dkt. No. 15), and that request was denied. Dkt. No. 19. A review of the docket in this matter reveals that any issues herein which the District Judge assigned to this matter determines to remain in dispute—whether defendants Hahn and Piserchia used excessive force against plaintiff in the October 1, 2014 incident, and whether defendant Hahn retaliated against plaintiff for filing grievances—are not overly complex. Further, it appears to the Court as though, to date, plaintiff has been able to effectively litigate this action by filing motions and opposing defendants' motions. See Dkt. Nos. 2, 15, 17, 24. In addition, the Court notes that on February 25, 2016, the undersigned signed a "Mandatory Pretrial Discovery and Scheduling Order." Dkt. No. 11. This Discovery and Scheduling Order requires defendants to automatically provide certain discovery to plaintiff, as well as directing plaintiff to turn over specified document to defendants. Id. The Order specifies the mandatory discovery that is to be provided, based on the particular type of action. Id. These mandates will help to frame the issues in the case and help plaintiff investigate the "important materials" without the need for counsel. Pl.'s Memo at 11. Moreover, defendants indicated to the Court on April 25, 2016, that they had complied with the Discovery and Scheduling Order. Dkt. No. 13. Discovery closed on August 28, 2016, as directed by the Court. Dkt. Entry Dated Aug. 30, 2016. To the extent that plaintiff is concerned that he needs counsel to assist him in

obtaining additional discovery or to address issues he may have with defendants' compliance with discovery, plaintiff may request a conference with the Court to address his discovery-related concerns. Similarly, to the extent plaintiff may be alleging that defendants have failed to produce certain required discovery, plaintiff may seek leave of the Court to file a motion to compel defendants' production of these documents and other materials.

Although the undersigned acknowledges that there may be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought under 42 U.S.C. § 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel." Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citation omitted). Finally, this Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, the undersigned finds that, based on the existing record in this case, appointment of counsel is unwarranted at this time. Plaintiff may only file another motion for appointment of counsel in the event that he can demonstrate that, in light of specific changed circumstances, consideration of the above factors warrants the granting of such an application. Plaintiff's request for counsel is therefore denied without prejudice.

### F. Request for Protective Order

Finally, plaintiff appears to request a protective order with regard to the discovery process. Pl.'s Memo at 9. Although it is not entirely clear what relief plaintiff is requesting, to the extent that plaintiff seeks an order to address alleged delays or deficiencies of defendants' production of discovery, or to request that the Court take specific measures to

monitor and control future communications (Pl.'s Memo at 9), plaintiff's request is denied. The party seeking discovery is not entitled to a protective order. FED. R. CIV. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ") (emphasis added); see Shaw v. Cowart, 300 F. App'x 640, 643 (11th Cir. 2008) (affirming the District Court's denial of an inmate plaintiff's request for a protective order when he claimed that the defendants had not complied with discovery requests). Therefore, plaintiff's request for a protective order is denied.

**G. Qualified Immunity**

Defendants allege that, should the Court determine that a constitutional violation occurred, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal citations omitted); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (internal citations omitted).

> [A] decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude (1) that the official violated a statute or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The Supreme Court has granted district courts "discretion to decide which of the two prongs . . . to tackle first [in order to] . . . save[] judicial resources by avoiding unnecessary decisions whether certain conduct violates a constitutional or

statutory right, when it is beyond reproach that the conduct was not objectively unreasonable in light of existing law." Coollick, 699 F.3d at 219-20 (internal quotation marks and citations omitted).

A constitutional right is clearly established if it is both reasonably specified and affirmed by both Supreme Court and Second Circuit case law and understood to be viewed by a reasonable defendant as unlawful under the status of the law at the relevant time in question. Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012) (internal citations omitted). Such an inquiry is context-specific, looking at "the contours of the right" which is alleged to be protected so that "the very action in question [need not] ha[ve] previously been held unlawful; but . . . in the light of pre-existing law the unlawfulness must be apparent." Doninger v. Niehoff, 642 F.3d 334, 345-46 (2d Cir. 2011) (internal quotation marks and citations omitted).

Here, the issue of qualified immunity is precluded from review by the existence of remaining disputes of material fact. See Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999) (citations omitted); Braswell v. Corley, No. 311-CV-1565 (MPS), 2015 WL 575145, at *20 (D. Conn. Feb. 11, 2015) (citation omitted) (denying review of qualified immunity defense in an excessive force case because material questions of fact remained in dispute). Accordingly, it is recommended that the defendants' motion for summary judgment on the basis of qualified immunity be denied.

## IV. Conclusion

WHEREFORE, for the reasons stated above, it is hereby

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 21), be

**GRANTED** in part and **DENIED** in part, as detailed herein; and it is

**ORDERED**, that plaintiff's request for appointment of counsel be **DENIED** without prejudice should plaintiff demonstrate a specific change in his circumstances; and it is further

**ORDERED**, that plaintiff's request for a protective order is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: July 27, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge